IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**WINFER "D.D." ABERNATHY**                                                           **PLAINTIFF**

**v.**                                    **4:08CV04187-BRW**

**UNION PACIFIC RAILROAD COMPANY**                                         **DEFENDANT**

### ORDER

Pending are Defendant's Motions to Exclude the Testimony of Dr. Ken Counts (Doc. No. 53), Dr. George Schoedinger (Doc. No. 56), Dr. Butchalah Garlapati (Doc. No. 58), and Dr. Robert Andres (Doc. No. 65). Plaintiff has responded,[1] and Defendant has filed replies.[2] Also pending is Defendant's Motion to Strike Proposed Expert Reports and Exclude the Proposed Expert Testimony (Doc. No. 63). Plaintiff has responded,[3] and Defendant has replied.[4]

Plaintiff filed this action under the Federal Employer's Liability Act ("FELA"),[5] alleging a cumulative trauma injury to his back as a result of his work for Defendant Union Pacific. FELA imposes upon employers a "continuous duty to provide a reasonably safe place to work."[6] Expert testimony is often required to establish the causal connection between an injury and the railroad's negligence,[7] and it is clearly necessary in this case. The test of causation under FELA

---

[1] Doc. Nos. 77, 79, 80, 89.

[2] Doc. Nos. 98, 99, 105.

[3] Doc. No. 84.

[4] Doc. No. 100.

[5] 45 U.S.C. § 51, *et seq.*

[6] *Francisco v. Burlington Northern R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000) (citing *Ackley v. Chicago & North Western Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987)).

[7] See *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 898 (8th Cir. 2010).

1

is whether the railroad's negligence played any part, however small, in the injury that is the subject of the suit.[8]

## I.     *Daubert* Motions to Exclude Testimony

Defendant seeks to exclude the testimony of several expert witnesses on the ground that they do not meet the standards for admissibility set out in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm.*[9]   Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a "gatekeeper," screening evidence for relevance and reliability.[10]  The proposed expert testimony must meet three requirements in order to be admitted under Rule 702.[11]

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  This is the basic rule of relevancy.  Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.[12]

---

[8]*Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980).

[9]509 U.S. 579 (1993).

[10]*Sappington v. Skyjack, Inc.*, 512 F.3d 440, 448 (8th Cir. 2008) (citing *Daubert*).

[11]*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

[12]*Id.* (internal citations and quotations omitted).

**A. Ken Counts, Ph.D.**

Dr. Ken Counts, a psychologist, has treated Plaintiff for pain associated with an anatomical injury. Plaintiff disclosed Dr. Counts as a witness not required to provide an expert report. Defendant wants Dr. Counts's testimony as to medical causation barred, but Plaintiff responds that Dr. Counts is not offering a medical causation opinion. Plaintiff concedes that Dr. Counts is not qualified to give an opinion as to the cause of Plaintiff's alleged injury.

Accordingly, Defendant's Motion (Doc. No. 53) is DENIED as MOOT. Dr. Counts will be permitted to testify regarding Plaintiff's psychological condition, treatment, and prognosis.

**B. Dr. George Schoedinger**

Defendant contends that Dr. Schoedinger's testimony fails to meet the requirements of Rule 702 and *Daubert*. First, some background information is necessary. Dr. Schoedinger is a board-certified medical doctor specializing in orthopaedic medicine and surgery.[13] He has had a clinical medical practice for forty years, has performed thousands of spinal surgeries, and has extensive experience treating people employed in the railroad industry.[14] Dr. Schoedinger began treating Plaintiff in January 2008, and he will testify that Plaintiff's lumbar spine injuries are a result of his work for Union Pacific.

The Eighth Circuit has held that "a medical opinion about causation, based upon a proper differential diagnosis, is sufficiently reliable to satisfy *Daubert*."[15] A differential diagnosis

---

[13] Doc. No. 56-2.

[14] *Id.*

[15] *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000).

requires an expert to "rule in" the suspected cause, as well as "rule out" other possible causes.[16] However, an expert is not required to resolve an ultimate issue of fact to "a scientific absolute."[17]

Defendant relies heavily on the Seventh Circuit case *Myers v. Illinois Cent. R.R. Co.*,[18] but that case is distinguishable.  In *Myers*, the treating physicians' opinions regarding causation were rejected because they did not use a differential diagnosis or etiology.[19]  They knew "little to nothing" about the plaintiff's medical history or his work, and did not "rule in" or "rule out" any potential causes.[20]  Similarly, in *McCann v. Ill. Cent. R.R. Co.*,[21] Dr. Schoedinger's causation opinion was excluded because the court found his opinions were "not based on testing or review of scientific data but were rather based upon assumption and speculation."[22]  In that case, Dr. Schoedinger knew little about the plaintiff's job duties and did not eliminate the plaintiff's non-work activities as causes.

Here, Dr. Schoedinger's opinion is based on a review of relevant facts, including Plaintiff's work history, medical history, non-work activities, and job duties.[23]  Under these circumstances, any inaccuracies in Plaintiff's self-reported history can be explored through cross-examination.

---

[16]*Id.* at 1209 (citing *Nat'l Bank of Commerce of El Dorado v. Associated Milk Producers, Inc.*, 22 F. Supp. 2d 942 (E.D. Ark. 1998).

[17]*Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003).

[18]629 F.3d 639 (7th Cir. 2010).

[19]*Id.* at 645.

[20]*Id.*

[21]711 F. Supp. 2d 861 (C.D. Ill. 2010).

[22]*Id.* at 868.

[23]Doc. No. 56-2.

4

Accordingly, Defendant's Motion to Exclude Dr. Schoedinger's testimony is DENIED.

## C. Dr. Butchalah Garlapati

Defendant makes many of the same arguments regarding Dr. Garlapati's causation testimony as it did for Dr. Schoedinger.  Additionally, Defendant contends that Dr. Garlapati's deposition testimony undermines any claim that he conducted a sufficiently reliable differential diagnosis.[24]  Defendant claims that Dr. Garlapati "specifically denies reaching an etiology or ruling in or out other possible causes."[25]  In fact, after some apparent difficulty in communicating, Defendant's lawyer asked Dr. Garlapati: "You agree that you have not ruled out all etiologies of this man's low-back pain?"[26]  Dr. Garlapati responded, "Right."  I do not believe this one statement is sufficient to exclude otherwise-admissible expert testimony.[27]

For the same reasons that the Motion was denied as to Dr. Schoedinger, as well as the discussion above, Defendant's Motion to Exclude Dr. Garlapati's testimony is DENIED.

## D. Robert Andres, Ph.D.

Dr. Andres is an ergonomist and biomechanist who offers opinions on two points: (1) whether Plaintiff was exposed to ergonomic risk factors during his work with Defendant; and (2) what type of comprehensive safety and health programs Defendant had in place to systematically deal with ergonomic issues for their workers.[28]  Dr. Andres holds a Ph.D. in

---

[24]*See* Doc. No. 98.

[25]*Id.*

[26]Doc. No. 58-1, p. 75.

[27]See *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 693 (8th Cir. 2001) (stating that the requirement of ruling out other possibilities "cannot be taken to a quixotic extreme," i.e., causation testimony should not be excluded because an expert has failed to rule out *every* possible alternative cause).

[28]Doc. No. 78-1.

5

bioengineering and is a board-certified professional ergonomist.[29]  His education and experience make him well-qualified to offer an opinion on ergonomic issues.

     First, Defendant is correct that Dr. Andres is not qualified to offer an opinion regarding medical causation.  Plaintiff makes it clear in his response that Dr. Andres does not intend to offer a causation opinion, so the Motion in this regard is DENIED as MOOT.

     Next, Defendant seeks to exclude Dr. Andres's liability opinion as irrelevant and unreliable.  Under FELA, railroads have "a general duty to provide a safe workplace."[30]  Defendant asserts that "a railroad is not required to furnish its employees with the latest, best, or most perfect tools with which to work, nor to discard reasonably safe and suitable equipment already in use, even though later improvements have been discovered."[31]  This is correct, "provided those in use are reasonably safe and suitable."[32]  Defendant also argues that the fact that there may have been an alternative method for Plaintiff's work is not admissible—and is irrelevant—to show that Defendant was negligent.  Indeed, the fact that there may have been a safer method does not *necessarily* make an employer liable under FELA.[33]  Plaintiff must prove that Union Pacific breached its duty to provide a reasonably safe work environment.[34]

---

[29]Doc. No. 89-1.

[30]*Waymire v. Norfolk and Western Ry. Co.*, 218 F.3d 773, 775 (7th Cir. 2000) (quoting *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998)).

[31]Doc. No. 66.

[32]*Chicago & N.W. Ry. Co. v. Bower*, 241 U.S. 470, 474 (1916).

[33]*Chicago, Rock Island & Pacific R.R. Co. v. Lint*, 217 F.2d 279, 282–83 (8th Cir. 1954).

[34]See *Francisco v. Burlington N. R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000).

6

Dr. Andres's report indicates that he used the following methods in reaching his opinions:

- Review of documents provided in this case
- Review of documents already in [his] possession relevant to Mr. Abernathy's complaint
- Review of the scientific literature concerning exposure to ergonomic risk factors and the development of [work-related musculoskeletal disorders]
- Systematic observational analysis of ergonomic risk factors present in several of the job tasks performed by workers like Mr. Abernathy
- Biomechanical analysis of some trackman tasks
- Comparison of [his] findings to others who have studied trackmen jobs
- Benchmarking of UP's ergonomic efforts compared to accepted best practices of reasonable industrial employers[35]

Defendant criticizes the report as not being based upon any reasonable methodology because Dr. Andres did not perform a site inspection or any number of other things. Dr. Andres conducted an ergonomic analysis of Plaintiff's job tasks including screening for ergonomic risk factors, observational analysis of ergonomic risk factors present in job tasks performed by Plaintiff, and a biomechanical analysis of forces and postures needed to perform those tasks. He concludes that Plaintiff was exposed to ergonomic risk factors for the low back. While Defendant objects to Dr. Andres's opinion as failing to establish negligence "because he does not prove that the 25 job tasks were unreasonably negligent and that the ergonomic risk factor could be eliminated," these are not requirements for the admission of Dr. Andres's opinion.

Defendant also contends that the scope of Dr. Andres's opinion should be limited to the 25 tasks addressed by the medical causation experts, but does not specifically point to any tasks Dr. Andres has analyzed that are outside those tasks. According to Defendant, "[t]o be helpful to the trier of fact, Andres must establish that each of these 25 tasks pose not only ergonomic risk

---

[35]Doc. No. 78-1, p. 3.

for injury but also that each of these 25 tasks are avoidably negligent."[36] The ultimate issue of negligence, however, is for the jury to decide. Dr. Andres's opinion as to whether Plaintiff's job tasks created unreasonable risk could be helpful to the jury in making this determination.

As for his opinion regarding a systemic ergonomics or medical management program, Dr. Andres compares Defendant's ergonomics efforts to those of other companies and to published guidelines. Defendant argues that this is irrelevant because Defendant is not required to have such a program and this information will not help the jury. Dr. Andres's opinion in this regard was excluded in *Wilcox v. CSX Transport., Inc.*,[37] but the present case is more similar to *Graham v. Union Pac. R.R. Co.*,[38] a case that allowed evidence that risk could have been diminished by an ergonomics program. Dr. Andres is prepared to offer evidence that Defendant's actions with respect to addressing ergonomic risk factors for trackmen and bridge welders were unreasonable and fall short of industry best practices. This goes to "the reasonable foreseeability of harm,"[39] and is therefore relevant to Defendant's duty of care.

I find that Dr. Andres's report is sufficiently relevant and reliable to be admissible under *Daubert*. Any deficiencies in Dr. Andres's methodology, can be addressed on cross-examination.

Finally, I give little weight to Defendant's repeated arguments that Dr. Andres's testimony would confuse the jury. The jury will be properly instructed on the law and Plaintiff's burden of proof.

---

[36]Doc. No. 105.

[37]No. 1:05CV107, 2007 WL 1576708, at *15 (N.D. Ind. 2007).

[38]No. 2:06CV00187-JLH, 2008 WL 4418930 (E.D. Ark. 2008).

[39]*Ackley v. Chicago and North Western Transport. Co.*, 820 F.2d 263, 267 (8th Cir. 1987).

8

Based on the above, Defendant's Motion (Doc. No. 65) is DENIED.

## II.     Motion to Strike Expert Reports and Exclude Proposed Expert Testimony

Defendant seeks to have the reports of Dr. Schoedinger and Dr. Garlapati stricken and their testimony excluded for failure to comply with Fed. R. Civ. P. 26(a)(2)(B). Defendant also requests that Dr. Counts's disclosures be stricken and any causation testimony excluded for failure to comply with Fed. R. Civ. P. 26(a)(2)(B) and 26(a)(2)(C).

### A.  Dr. Schoedinger's Report

In a previous Order, I required Plaintiff to provide expert reports from treating physicians who will testify as to causation in this case.[40] Defendant now challenges whether the expert report provided for Dr. Schoedinger is sufficient. Rule 26(a)(2)(B) requires that a witness who is "retained or specially employed to provide expert testimony" prepare a written report that includes specific information, including a list of cases the expert testified in during the previous four years and a statement of compensation paid.[41] Defendant contends that Dr. Schoedinger's report is deficient for failing to contain lists of cases for the previous four years or statements of compensation.

Plaintiff contends that, as a non-retained treating physician, Dr. Shoedinger is exempt from the Rule 26(a)(2)(B) report requirements and subject to the less stringent Rule 26(a)(2)(C) reporting requirements. The April 2010 Order, however, required that Plaintiff provide an expert report under Rule 26(a)(2)(B). So, Plaintiff's argument under the subsequent 2010 amendment creating Rule 26(a)(2)(C) is unavailing.

---

[40]Doc. No. 35.

[41]Fed. R. Civ. P. 26(a)(2)(B).

9

In this case, Plaintiff did provide the expert reports, but the reports omitted some required information. Several factors lead me to believe that striking the expert reports and testimony is not appropriate in this case. The deposition of an expert required under Rule 26(a)(2)(B) to issue a report may be conducted only after the report is provided.[42] Here, Dr. Schoedinger's deposition proceeded despite the deficiencies in the report, apparently without objection from Defendant. Furthermore, Defendant did not ask him about his prior expert testimony—one of the areas not covered in the report and about which Defendant now complains. Under these circumstances, the deficiencies Defendant complains of do not warrant striking the report. Plaintiff is directed to supplement the report of Dr. Schoedinger with this information within 10 days of the date of this Order.

Defendant's Motion to Strike Dr. Schoedinger's report and exclude his testimony is DENIED, and supplementation of the report is ordered.

### B. Dr. Garlapati's Report

In addition to the reasons that Defendant seeks to strike Dr. Shoedinger's report, Defendant contends that Dr. Garlapati's report should be stricken because it was prepared by counsel, not Dr. Garlapati. Rule 26(a)(2)(B) requires that expert reports be "prepared and signed by the witness." Dr. Garlapati testified at his deposition that his report was sent to him in its final form, and he reviewed, approved, and signed it.[43] Dr. Garlapati testified that he had read the materials listed in the report as having been considered.

The Advisory Committee Notes to the 1993 Amendment provide that:

Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this

---

[42]Fed. R. Civ. P. 26(b)(4)(A).

[43]Doc. No. 58-1, p. 8–9.

assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Other courts have found that considerable assistance from counsel is permitted.[44] Here, Dr. Garlapati adopted the report as his own by approving and signing it. As the Advisory Committee Notes make clear, the rule is intended to ensure that an expert reports accurately reflects the expert's opinion and expected testimony. Notably, there is no suggestion that the report does not contain Dr. Garlapati's expected testimony.[45] Any technical deficiency with regard to the preparation of Dr. Garlapati's report does not warrant striking the report.

Defendant's Motion to Strike Dr. Garlapati's report and exclude his testimony is DENIED. Plaintiff is directed to supplement Dr. Garlapati's report, as set out for Dr. Schoedinger's report, within 10 days of the date of this Order.

### C. Disclosures for Dr. Counts

As to Dr. Counts, Defendant contends that Plaintiff's disclosures are "improper" because they do not reflect Dr. Counts's actual opinions. I find that Plaintiff's disclosure adequately sets out Dr. Counts's expected testimony, and any confusion whether Dr. Counts would testify regarding causation is cured by Plaintiff's responses and this Order.

Defendant's Motion is DENIED as to Dr. Counts.

---

[44]*Indiana Ins. Co. V. Hussey Seating Co.*, 176 F.R.D. 291 (S.D. Ind. 1997) (finding harmless technical violations of expert report rule in expert's failure to sign report and counsel's providing substantial assistance in preparing it); see also *Marek v. Moore*, 171 F.R.D. 298 (D. Kan. 1997).

[45]In its papers on its *Daubert* Motion to Exclude Dr. Garlapati's report and testimony, Defendant contends that Dr. Garlapati's deposition testimony undermines any claim that he conducted a differential diagnosis. This, however, is a proper ground for cross-examination, not striking his report.

## CONCLUSION

As set out above, Defendant's *Daubert* Motions are DENIED as MOOT (Doc. No. 53) and DENIED (Doc. Nos. 56, 58, 65).  Defendant's Motion to Strike Expert Reports and Exclude Proposed Expert Testimony (Doc. No. 63) is DENIED.

IT IS SO ORDERED this 13th day of April, 2011.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE